[Civ. No. 5645.   Fourth Dist.   Apr. 17, 1958.]

OLGA BETH HOELZLE, Appellant, v. FRESNO COUNTY, Respondent.

Green, Green & Bartow and Clifford H. Plumley for Appellant.

Hansen, McCormick, Barstow & Sheppard and William B. Boone for Respondent.

BARNARD, P. J.—This is an appeal from a judgment in favor of the defendant in an action to recover damages for the death of plaintiff's husband William W. Hoelzle, and for damages to his automobile.

The plaintiff's husband met his death by drowning, his body having been found in an irrigation canal several miles southwest of Firebaugh in Fresno County. In the area involved there are three canals parallel with each other, running in a northerly and southerly direction. A small country road with dirt or gravel surface runs east and west, crossing each of these canals. This was an old road, and it and the bridge here involved had been deeded to the county on April 24, 1953. The most easterly of these canals is called the "East" canal. The "Center" canal is one-quarter of a mile west of the "East" canal, and 200 yards west of the "Center" canal is the "Delta-Mendota Canal," a Federal project. The body of plaintiff's husband was found in the "Center" canal.

On April 1, 1956, the plaintiff and her husband and a Mr. and Mrs. Thompson were fishing together in the "East" canal. The women had gone there earlier in the Thompson car, and the men arrived about noon in the 1953 Studebaker owned by plaintiff's husband. About 1 p.m. the two men left the women and drove about a quarter of a mile south along the same canal to fish at a new location. About 3 p.m. the women observed that the men and their car had disappeared from that location. The women made an unsuccessful search for the men during that afternoon, and later the disappearance of the men was reported to the authorities. The bodies of the men were found on April 3 in the car of plaintiff's husband which was submerged in the "Center" canal. The car was raised from the canal by its front end and the bodies of both men were in the back seat when the car emerged from the water.

The complaint in this action alleged that the death of plaintiff's husband was proximately caused by the dangerous and defective condition of this public road and bridge, and that the defendant and its agents had failed to remedy the same within a reasonable time after acquiring knowledge of the dangerous and defective conditions. The defendant's answer "denies generally and specifically, each and every, all and singular the allegations of said complaint." As a further and separate answer and affirmative defense to the complaint the answer alleged "That William W. Hoelzle did not exercise ordinary care, caution or prudence in the premises to avoid the happening of said accident and the said accident and death of said William W. Hoelzle were directly and proximately caused and contributed to by the negligence in the premises of said William W. Hoelzle." The action went to trial with a jury, and at the close of the plaintiff's case the plaintiff objected to the introduction of any evidence by the defendant, and moved for judgment on the pleadings, on the ground that defendant's answer failed to raise any issue or state a defense. The court overruled this objection and denied this motion, and the trial proceeded. The jury returned a verdict in favor of the defendant, a motion for a new trial was denied, and the plaintiff has appealed from the judgment.

It appears from the evidence, and it is conceded, that the car involved had been traveling west on this road and that it had gone off the south side of the bridge across the "Center" canal. This bridge was 89 feet long and 15 feet wide. Instead

of a railing there were guard rails on each side of this bridge consisting of 6 inch by 6 inch timbers fastened to the outside edges of the bridge. As one approached this bridge traveling west there is a gradual curve to the right, and the road rises somewhat as it approaches the bridge and depresses somewhat as it leaves the bridge on the westerly side. Several signs were installed for the benefit of west-bound traffic approaching this bridge. A standard road sign with reflectors indicating a curve to the right ahead was located 435 feet east of this bridge. About 150 feet east of this bridge there was a reflector sign with the words "One Lane Bridge." Near the east entrance to the bridge on the south side there was a sign with nine red reflector buttons on it, each button being about three inches in diameter, and on the north side there was a reflector post marking the right side of the roadway and the bridge entrance.

Some tire marks were found on this bridge for a distance of 28 feet, indicating the course the car in question had followed in going off the bridge. All of these marks were on the south edge of the bridge, and none of them were near the center of the bridge. The marks began a few feet west of the entrance to the bridge and the other end of the marks was out toward the middle of the bridge. At the eastern end the marks were against the south guard rail "and then they went on top, and then they were gone." The plaintiff introduced 20 photographs of the road and bridge in the area involved, and the defendant introduced eight. The plaintiff's photographs show that there was an exceptionally well defined line of travel along the center of this one-way bridge, which would naturally be followed by anyone using the bridge. These photographs illustrate that a car would have to move several feet off the main traveled portion of the bridge in order to reach the south edge, and they further indicate that there was nothing about the approach to the bridge which would normally cause a car to travel along the south edge of the bridge, if any reasonable care was used by the driver. The deceased had fished in this general area on other occasions and the plaintiff testified that she had fished from both sides of this bridge several times, that her husband was not with her on those occasions, and that she had driven over this bridge at least twice. There was also evidence that Mr. Hoelzle was lame in both legs and had very weak ankles. His driver's license limited him "to operate a motor vehicle equipped with

automatic type clutch or transmission or vehicle equipped with hand controlled brake.'' His car was equipped with an automatic transmission and power brakes, with a special power booster on the brakes which he had installed.

The appellant contends that the court erred in overruling her objection to the introduction of any evidence by the respondent, and in denying her motion for judgment on the pleadings; that the answer admitted the truth of all of the allegations of the complaint, since it did not specifically deny those allegations; that the answer stated no defense since it failed to sufficiently allege contributory negligence, and presented no such issue; and that since the answer clearly admitted all of the allegations of the complaint and failed to state any defense the court erred in refusing to grant the motion for judgment on the pleadings. It is argued that since the complaint here was verified, section 437 of the Code of Civil Procedure required that the answer must be specific and directed to certain paragraphs or specific parts of the complaint, and that the answer here, being a ''general denial,'' was not sufficient to raise any issue. Such cases as *Hirons* v. *Clare,* 38 Cal.App. 608 [177 P. 291] ; *Muraco* v. *Don,* 79 Cal. App. 738 [250 P. 1109] ; *Hearst* v. *Hart,* 128 Cal. 327 [60 P. 846], and *Adjustment Corp.* v. *Hollywood etc. Co.,* 35 Cal. App.2d 566 [96 P.2d 161] are cited in support of this contention. It is also argued that the answer was not sufficient to raise the issue of contributory negligence since it failed to allege the specific acts of negligence upon which the pleader relied. In this connection the cases of *Preston* v. *Hubbell,* 87 Cal.App.2d 53 [196 P.2d 113], *Hoffman* v. *Southern Pac. Co.,* 84 Cal.App. 337 [258 P. 397], and *Crabbe* v. *Mammoth Channel Gold Min. Co.,* 168 Cal. 500 [143 P. 714] are cited.

Most of the cases cited with reference to the general denial of the answer were decided before the 1927 amendment to section 437 of the Code of Civil Procedure. In *Adjustment Corp.* v. *Hollywood etc. Co.,* the controlling point was that the answer was evasive and failed to raise an issue upon the material allegation of the complaint that the debt was due and owing. The cases cited on the question of a sufficient allegation of contributory negligence cannot be considered controlling under the circumstances appearing here. In *Preston* v. *Hubbell* certain specific acts had been pleaded and the instructions criticized related to matters outside the specific acts pleaded. In *Hoffman* v. *Southern Pac. Co.* it was held

that as a general rule the defense of contributory negligence must be pleaded, but that where it appears from the plaintiff's own evidence the plea is available to the defense although it is not pleaded in the answer. The case of *Crabbe* v. *Mammoth Channel Gold Min. Co.* seems to have been decided largely on the old theory that by pleading contributory negligence the pleader admits his own negligence and then seeks to avoid the effect of it. That case was also decided before section 437 of the Code of Civil Procedure was amended. That section now provides that an answer shall contain a "general" or a specific denial of the material allegations controverted, with a statement of any new matter constituting a defense. It also provides that the denial of the allegations controverted must be made positively or on information and belief, but it omits the previous requirement that the denial of each allegation must be specific. It also provides that the denials of the allegations controverted "may be stated" by reference to specific parts of the complaint. The answer here filed was sufficient to raise an issue with respect to the allegations of the complaint. (*Del Fanta* v. *Sherman,* 107 Cal.App. 746 [290 P. 1087] ; *Reinert* v. *Proud,* 8 Cal.App.2d 169 [47 P.2d 491] ; *Ukhtomski* v. *Tioga Mutual Water Co.,* 12 Cal.App. 2d 726 [55 P.2d 1251].) ■■■ With respect to the issue of contributory negligence no demurrer was filed to the answer, and if one had been filed and overruled the plaintiff would not be entitled to a reversal of the judgment in the absence of a showing of prejudice. (*Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129 [299 P.2d 668].) Section 452 of the Code of Civil Procedure provides that in construing a pleading for the purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice between the parties. No prejudice appears here since the answer made it perfectly clear what issues the adverse parties must meet. Taken in connection with the complaint, no reasonable person could be in any doubt about the issues to be met. Since there were no eyewitnesses to this accident the precise facts were not known to either party, and this suggests an additional reason why the provision for a liberal construction of section 452 should be applied here. The appellant was in no way misled and the answer was sufficient to raise the issues of negligence and contributory negligence.

■■ It is next contended that the question of contributory negligence rested solely on surmise and conjecture, and that

the court erred in submitting that issue to the jury. It is argued that since there were no eyewitnesses to the accident the appellant was entitled to the benefit of the presumption that he had used due care for his own safety; that there was no other evidence to combat this presumption; that there was no evidence justifying any inference tending to show that the deceased was guilty of contributory negligence; that such an inference could not be drawn merely because the car went off the bridge; and that it is not even shown by the evidence that the deceased was driving the car at the time the accident occurred.

While the presumption of due care was here applicable, the evidence of the tire marks along the guard rail, indicating what had actually happened, tended to rebut that presumption and furnished some evidence of what had occurred, from which reasonable inferences could be drawn. This evidence and much of appellant's own evidence, including the pictures introduced, strongly tended to indicate a lack of negligence on the part of the respondent and the fact of negligence on the part of the driver of the car, and was sufficient to justify an inference on the issue of proximate cause. While there was no direct evidence that the deceased was driving the car it could be reasonably inferred that he was, since it was his car and it was specially equipped for his use. If the deceased was not driving the car the evidence which would then apply to the other occupant of the car was still material and substantial on the issue of proximate cause. As the trial judge stated when the motion for a judgment on the pleadings was made, "The issue of contributory negligence has already been presented factually by the plaintiff's own testimony" and "I think the case is replete with evidence which the jury at this stage could construe one way or the other on both issues." The evidence was sufficient to justify the submission of all of these various issues to the jury. Many questions of fact were involved, and the parties were entitled to the submission of their various theories to the jury, as justified by the evidence, and under proper instructions.

Finally, the appellant contends that the court erred in giving instructions relating to the duty of care resting on the driver of a motor vehicle, and instructions relating to speed and looking but not seeing. It is argued that these instructions were improper since there was no evidence that the deceased was the driver of the car, and no evidence to support a finding of contributory negligence. The appellant requested five instructions on contributory negligence which

were given, and the arguments of her attorneys to the jury were more favorable than otherwise to the conclusion that the actual fact was that the plaintiff's husband was the driver of this car. These tire marks on the bridge were sufficient to call the attention of the officers to where the car was submerged, and these marks, with the photographs introduced by the appellant, furnish rather strong evidence of what must have occurred. The case involved several factual issues which were properly submitted to the jury under instructions which were not only correct in themselves but were called for by the evidence which had been received. While these were factual questions for the jury, it is difficult to see from the evidence received how such an accident could have occurred if any reasonable care had been used by the driver of this car. The case was fairly tried and most skillfully argued to the jury, and we find no reversible error in the record.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.