[Civ. No. 20326. Fourth Dist., Div. Two. Sept. 17, 1979.]

WILLIAM CONLEY et al., Plaintiffs and Appellants, v.
STANLEY P. LIEBER, Defendant and Respondent.

COUNSEL

Marvin B. Kapelus for Plaintiffs and Appellants.

Haight, Dickson, Brown & Bonesteel and Roy G. Weatherup for Defendant and Respondent.

OPINION

McDANIEL, J.—

### INTRODUCTION

The action in the trial court was for money damages allegedly arising from the legal malpractice of defendant, a practicing attorney. According to the allegations of the complaint, the defendant was retained by the four named plaintiffs to prepare a limited partnership agreement wherein

they, the plaintiffs, would be cast as the limited partners. In addition, as alleged, defendant was "engaged . . . for the purpose of providing documentation, review and supervision of the plaintiffs' investment in said limited partnership and to insure that said investments were secured."

According to the complaint, $24,000 was invested in the limited partnership venture. This sum was ultimately lost, and the plaintiffs alleged that they could not recoup their cash because of the negligence of defendant in failing to take the necessary action to see that the investment was secured. In a trial to the court, after plaintiffs had presented their evidence, defendant moved for judgment under section 631.8 of the Code of Civil Procedure.[1] The motion was granted, and judgment was entered in favor of defendant accordingly. The plaintiffs appealed.

## FACTS

The findings of fact filed in support of the judgment are ambiguous in the sense that they do not deal directly and specifically with the key threshold question of whether defendant was ever retained as an attorney by plaintiffs to perform particular legal services for them. In this connection, at the very beginning of the trial, defendant was called by plaintiffs under section 776 of the Evidence Code, and after the customary preliminary questions were asked, defendant was queried, "Did you at any time purport to represent the limited partners [plaintiffs]?" To this question defendant answered, "No, I didn't." This fact was never refuted nor contradicted, and the court made no finding on the issue of representation.

However, there were two findings made with reference to the subject of duty. They read:

---

[1]When this case was tried, section 631.8 read as follows:

"After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 of this Code, or may decline to render any judgment until the close of all the evidence. Such motion may also be made and granted as to any cross-complaint.

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

Section 631.8 was amended in 1978, that amendment becoming effective January 1, 1979.

"20. Lieber owed a duty to the plaintiffs to form a limited partnership which complied with the formal requirements of California Corporations Code §§ 15501 et seq. Lieber breached that duty.

"21. Lieber owed a duty to the plaintiffs to obtain title documents for property which was purchased with any of the plaintiffs' monies which were entrusted to Lieber."

Parenthetically, then, we must observe that any liability of defendant to plaintiffs would have necessarily attached under the theory of *Heyer* v. *Flaig,* 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], and *Lucas* v. *Hamm,* 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], which hold that an attorney may be liable for negligence causing damages to persons intended to be benefitted by his professional performance, irrespective of any lack of privity between the attorney and the parties to be benefitted.

Regardless of what theory the plaintiffs may have relied upon to pursue their alleged grievance against defendant, the court also found that "[t]here was no proof that any act or omission by [defendant] was the proximate cause of plaintiffs' loss of $24,000 or the proximate cause of any loss suffered by the plaintiffs."

Nevertheless, in order to understand certain of the assignments of error, it is necessary to set forth a kind of synopsis of the background events which led to this litigation. Such synopsis is gleaned in part from the findings and in part from the pleadings, there being no factual dispute over what actually happened. The dispute is over the legal interpretation to be placed on what happened, or perhaps more accurately, what did not happen.

Here then is the story. Defendant represented Mort Lindner and a corporation which Lindner owned and controlled known as California Leisure Boat Club, Inc. This corporation was in the business of renting pleasure yachts and boats to its "members," an apparent euphemism for its clientele. Barbara Tockerman is an accountant and tax advisor and represented California Leisure Boat Club, Inc., as its accountant. She was also similarly retained by the plaintiffs.

In October 1974 Barbara Tockerman proposed to each plaintiff that he invest in a limited partnership consisting of himself and the others as limited partners, with California Leisure Boat Club, Inc., and Mort Lindner acting as general partners. The proposed scheme was that: (1)

the plaintiffs' investment be used to purchase pleasure boats; (2) title to the boats be vested in the limited partners; (3) the general partners would lease the boats from the limited partners; and (4) the limited partners would recoup their investments through the lease payments received from the general partners. It was advocated by Barbara Tockerman that the plaintiffs' investments would be "protected" by having the certificates of ownership of each boat purchased issued in the names of the limited partners before any funds were disbursed to the general partners.

With these objectives in mind, Barbara Tockerman organized a meeting in October of 1974 at which she and Mort Lindner were in attendance along with defendant and the plaintiffs. Before this meeting, Mort Lindner and California Leisure Boat Club, Inc., had retained defendant as an attorney to prepare a limited partnership agreement which would name the principals in the roles already noted and which would denominate it as the California Gas and Boat Club. It was at the request of Mort Lindner that defendant attended the meeting with plaintiffs and there explained to them that he would prepare the agreement and was doing so at the instance of Mort Lindner. This was the only time defendant ever met with plaintiffs.

Thereafter, the agreement was prepared and forwarded to Barbara Tockerman with the expectation that she would take the steps necessary to obtain thereon the signatures of the plaintiffs. This was never done, and the agreement was never returned to defendant. As a consequence, no certificate of limited partnership was ever perfected and recorded.

Other steps were taken, however, to implement the venture. The day after the meeting noted, Barbara Tockerman, acting at the instance of Mort Lindner, asked defendant to prepare a kind of investment receipt in the form of an agreement between California Leisure Boat Club and the "investors," specifying receipt of a given amount for the account of the new limited partners, the same to be deposited in trust in the Wells Fargo Bank and only to be withdrawn upon the signature of defendant and another to be designated in aid of the agreement. It provided that "[i]f no agreement is reached . . . the total amount of said investment will be returned."

The findings then read:

"9. On October 10, 1974, Lieber directed Tockerman to insert in the agreement, set forth in ¶ 8, the names of the investors in the proposed

limited partnership and the dates and amounts of their investments, and to choose one of the investors as the signatory on checks to be drawn from the trust account identified in the above agreement.

"10. At some time between October 10, 1974 and November 2, 1974, Lieber opened a checking account at the Hollywood office of the Wells Fargo Bank in which he deposited $5,000. Lieber and Conley were co-signatories on all checks issued on that account.

"11. On November 2, 1974, Lieber and Conley co-signed a check payable to the California Leisure Boat Club on the aforesaid Wells Fargo account in the sum of $600 for the California Leisure Boat Club to lease a 28 foot Chris Craft. There was no evidence the $600 was or was not used to lease the Chris Craft by the California Leisure Boat Club. Nor was there evidence regarding what happened to that $600.

"12. On November 3, 1974, Lieber and Conley co-signed a check on the aforesaid Wells Fargo account payable to the California Leisure Boat Club in the sum of $4,000 to purchase a ski boat. There was no evidence the $4,000 check was or was not used by the California Leisure Boat Club to purchase a ski boat. Nor was there evidence regarding what happened to that $4,000.

"13. On March 1, 1975, Lieber and Conley co-signed a check on the aforesaid Wells Fargo account payable to the California Leisure Boat Club in the sum of $400 to purchase a boat radio. There was no evidence the $400 was or was not used by the California Leisure Boat Club to purchase the radio. Nor was there evidence regarding what happened to that $400."

It was after these events occurred that defendant forwarded to Barbara Tockerman the limited partnership agreement for plaintiffs' signatures. The findings further indicate that "[a]t that time Lieber also forwarded to Tockerman another document entitled 'Agreement for Repayment,' wherein, among other things, Lindner on the behalf of the California Leisure Boat Club acknowledged the California Leisure Boat had received $24,000 from the limited parnters [sic] of the California Gas and Boat Club, and agreed the California Leisure Boat Club would lease boats from the California Gas & Boat Club for $400 per month for 5 years and agreed the California Leisure Boat Club would sign a limited partnership agreement with the limited partners of the California Gas and Boat Club.

"15. Tockerman never returned the limited partnership agreement to Lieber. There was no evidence the plaintiffs ever signed the limited partnership agreement or a certificate of limited partnership."

For reasons not amplified by the record, "[t]he plaintiffs lost all of the $24,000 they had invested in the California Gas & Boat Club." Moreover, when they undertook to recover their losses by repossessing certain boats, they learned that there had been no boat ownership certificates issued in their names. In this connection, the trial court found that "Lieber owed a duty to the plaintiffs to obtain title documents for property which was purchased with any of the plaintiffs' monies which were entrusted to Lieber." However, the findings go on to state:

"22. There was no evidence that $19,000 of the plaintiffs' $24,000 investment in the California Gas & Boat Club was entrusted to Lieber. Nor was there any evidence regarding the disbursement or fate of the $19,000 of the plaintiffs' $24,000 investment in the California Gas & Boat Club.

"23. There was no proof that the $5,000 deposited in the Wells Fargo account was a portion of the plaintiffs' $24,000 investment in the California Gas & Boat Club.

"24. There was no proof Lieber breached his duty to the plaintiffs in regard to any of the $24,000 the plaintiffs' invested in the California Gas & Boat Club.

"25. There was no proof that any act or omission by Lieber was the proximate cause of the plaintiffs' loss of $24,000 or the proximate cause of any loss suffered by the plaintiffs."

As noted, at the trial, after plaintiffs concluded presentation of their case, defendant interposed a motion for judgment pursuant to Code of Civil Procedure section 631.8. Defendant urged such motion on the theory that plaintiffs had not succeeded in establishing a prima facie case of legal malpractice because of their failure to offer expert testimony on the standard of care required of an attorney in these circumstances. Additionally, defendant argued, even assuming plaintiffs had presented the required expert testimony and demonstrated his failure to adhere to the proper standard of care, that plaintiffs had failed to offer further evidence indicating that defendant's conduct proximately caused plaintiffs' monetary losses.

In response to defendant's section 631.8 motion, plaintiffs contended that defendant's answer contained a "negative pregnant" effectively admitting proximate causation and damages. Hence, plaintiffs argued, in light of that negative pregnant, that they had established a prima facie case of attorney negligence. However, the trial court disagreed with plaintiffs, ruling that defendant's answer sufficiently denied the allegations in plaintiffs' complaint so as to preclude the admissions urged by plaintiffs. Thereafter, the trial court granted defendant's section 631.8 motion and plaintiffs appealed from the judgment entered thereon.

## ISSUES AND DISCUSSION

On appeal, plaintiffs raise three issues in contesting the propriety of the trial court's granting of defendant's section 631.8 motion: (1) the trial court erred in ruling that defendant's answer did not contain a negative pregnant admitting proximate causation and damages; (2) the trial court in terms of the evidence erred in granting defendant's section 631.8 motion; and (3) the trial court erred when it refused to grant plaintiffs' motion for a hearing to consider their objections to certain findings of fact. For the reasons explained below, we conclude that plaintiffs' contentions are without merit. Accordingly, the judgment is affirmed.

I

■ *Defendant's answer properly denied the allegations in paragraphs 9, 10, and 11 of plaintiffs' complaint.*

Paragraphs 9, 10, and 11 of plaintiffs' verified complaint read as follows:

"9.   That as a direct and proximate result of the negligent acts of the defendants, and each of them, plaintiffs have been damaged in the sum of $24,000.00 and special damages for funds layed out and expended by defendants on plaintiffs account.

"10. That as a direct and proximate result of the negligent and wrongful acts of defendants, plaintiffs have suffered damages to property in the form of lost security in boats to be retained by plaintiffs in the sum of $24,000.00.

"11. That as a direct and proximate result of the wrongful acts of the defendants, and each of them, plaintiffs have suffered general damages in

the form of mental anguish, emotional distress, humiliation and aggravation in the sum of $24,000.00."

Paragraph 6 of defendant's answer, directed at those allegations, states: "6. Answering paragraphs 6, 7, 8, 9, 10 and 11, defendant denies generally and spcifically [*sic*] each and every allegation contained therein."

Plaintiffs urge that we characterize paragraph 6 of defendant's answer as a negative pregnant and hold it to be an improper denial, thus admitting the facts stated in the paragraphs of the complaint just noted. (See, e.g., *Armer* v. *Dorton,* 50 Cal.App.2d 413 [123 P.2d 94].) As defendant correctly observes "[i]n the distant past, rules of pleading may have been strictly and mechanically applied." However, plaintiffs fail to recognize that in 1927 the Code of Civil Procedure was significantly reformed to liberalize the pleading rules concerning answers. In that regard, in 1927 the California Legislature amended the Code of Civil Procedure expressly to permit the type of answer filed in this case. Before the 1927 amendment, section 437 required that denials in an answer "must be *specific,* and be made positively, or according to the information and belief of the defendant." (Italics added.) However, after the 1927 amendment section 437 read "[t]he denials of the allegations controverted *may be stated by reference to specific paragraphs or parts of the complaint.*"[2] (Italics added.)

*Hoelzle* v. *Fresno County,* 159 Cal.App.2d 478 [324 P.2d 74], demonstrates the post-1927 judicial philosophy of liberal construction of answers to complaints. *Hoelzle* involved a plaintiff's personal injury action seeking damages for the wrongful death of a spouse allegedly caused by the "dangerous and defective condition" of the defendant county's public road and bridge. (*Id.,* at p. 480.) Defendant, in its answer, stated only that it " 'denies generally and specifically, each and every, all and singular the allegations of said complaint.' " (*Id.*) After a judgment for defendant, plaintiff, like plaintiffs here, appealed, arguing "that the answer admitted the truth of all of the allegations of the complaint, since it did not specifically deny those allegations . . ." (*Id.,* at p. 482.)

---

[2]Section 437 was superseded in 1971 by section 431.30. Subdivision (f) of section 431.30 retains the same language noted in the text: "The denials of the allegations controverted may be stated by reference to specific paragraphs or parts of the complaint . . . ." As noted in the Law Revision Commission comment to section 431.30: "Subdivisions (a), (b), (d), (e), and (f) of Section 431.30 are the same in substance as former Code of Civil Procedure section 437 except that they have been broadened to specifically include cross-complaints."

We note further, that plaintiffs' complaint was verified. In that regard subdivision (d) of section 431.30 reads: ". . . if the complaint is verified, the denial of the allegations shall be made positively. . . ."

The Court of Appeal disagreed, noting first that "[m]ost of the cases cited [by plaintiff] with reference to the general denial of the answer were decided before the 1927 amendment to section 437 . . ." (*Id.*) According to the *Hoelzle* court, those cases were inapposite insofar as they required exacting specificity in answering a complaint. Similarly, in the case at bench, certain of the decisions relied upon by plaintiffs predate the 1927 amendment to section 437 and hence must be viewed as having no precedential significance.[3]

Moreover, the *Hoelzle* court proffered the following interpretation of section 437, as amended in 1927, in holding that defendant's answer was adequate to contest the allegations in the plaintiff's complaint: "[Section 437] now provides that an answer shall contain a 'general' or a specific denial of the material allegations controverted, with a statement of any new matter constituting a defense. It also provides that the denial of the allegations controverted must be made positively or on information and belief, *but it omits the previous requirement that the denial of each allegation must be specific. It also provides that the denials of the allegations controverted 'may be stated' by reference to specific parts of the complaint.* The answer here filed was sufficient to raise an issue with respect to the allegations of the complaint. [Citations.]" (*Id.,* at p. 483, italics added.)

Defendant in the case at bench, in paragraph 6 of his answer, denied generally and specifically certain numbered paragraphs of the complaint. In light of the liberality afforded answers under section 437 and, as superseded, under section 431.30, we hold that defendant's answer in its form and content effectively denied the allegations in paragraphs 9, 10 and 11 of plaintiffs' complaint.

---

[3]Plaintiffs did cite three cases decided *after* 1927. They are: *Calif. Corrugated C. Co.* v. *Stewart,* 215 Cal. 120 [8 P.2d 1013]; *Armer* v. *Dorton, supra,* 50 Cal.App.2d 413; and *Connecticut Mut. L. Ins. Co.* v. *Most,* 39 Cal.App.2d 634 [103 P.2d 1013]. These, however, are true "negative pregnant" cases which did not involve an answer of the kind here utilized by the defendant. For instance, in *Calif. Corrugated,* the plaintiff, in a mechanic's lien case, had alleged that " 'the whole of said real property is necessary for the convenient use and occupation of said barn and grain elevator.' " (*Id.,* at p. 123.) In the answer the defendant responded with reference to said allegation, " 'Denies that the whole of said real property is necessary for the convenient use and/or occupation of the barn and/or grain elevator.' " (*Id.,* at p. 123.) This is a true negative pregnant, and the court there ruled that its use resulted in an admission of the plaintiff's allegation noted. (See 3 Witkin, Cal. Procedure (2d ed. 1971) § 890, p. 2485.) The obvious observation then is that to deny generally and specially the allegations of a certain numbered paragraph in the *complaint* is not a negative pregnant; it is a form fully authorized by the Code of Civil Procedure with no historic or structural relationship to what pleaders have long recognized as a "negative pregnant."

## II

██ *The trial court properly granted defendant's Code of Civil Procedure section 631.8 motion.*[4]

In contesting defendant's judgment, plaintiffs argue only that finding of fact No. 23 was erroneous. That finding reads: "There was no proof that the $5,000 deposited in the Wells Fargo account was a portion of the plaintiffs' $24,000 investment in the California Gas & Boat Club."

Plaintiffs contend that finding No. 23 is not supported by substantial evidence and therefore fails to support the judgment because defendant testified "that he knew that the money [the $5,000] that was deposited in the Wells Fargo account was, at the time it was deposited in that account, being deposited as investor money to become part of the assets of the limited partnership. . . ."

After perusal of the reporters' transcript on appeal, the only testimony we find regarding whether the $5,000 was part of plaintiffs' investment came from defendant. In that regard, on redirect examination, the following colloquy occurred between plaintiffs' attorney and defendant:[5]

"Q. The $5,000 that went into the Wells Fargo account, what was the purpose of that money?

"A. I assume the purpose was to purchase a boat or transfer money to California Leisure Boat Club as soon as possible.

"Q. Was that part of the investment that any of the investors were making pursuant to your meeting of October the 9th?

"A. I believe so." As noted above, regardless of defendant's statement that he believed the $5,000 was part of plaintiffs' investment, the trial court stated in finding No. 23 that "[t]here was no proof that the $5,000 deposited in the Wells Fargo account was a portion of the plaintiffs' $24,000 investment . . ."

██ *"Where evidence is in conflict, the appellate court will not disturb the verdict of the jury or the findings of the trial court.* The presumption

---

[4]See footnote 1, *ante.*

[5]Plaintiffs called defendant as their first witness pursuant to Evidence Code section 776 and examined him as an adverse party.

being in favor of the judgment . . . the court must consider the evidence in the light *most favorable to the prevailing party*, giving him the benefit of *every reasonable inference*, and *resolving conflicts* in support of the judgment." (6 Witkin, Cal. Procedure (2d ed. 1971) § 245, p. 4236, original italics.)

Apparently, the court characterized defendant's *undocumented* testimony as insufficient to support a factual finding that evidence existed demonstrating that the $5,000 represented a part of plaintiffs' investment. In light of the standard of appellate review just noted, we are precluded from second guessing the finder of fact in the case at bench. Thus, we agree with the trial court's conclusion that no substantial evidence existed to support a finding that the $5,000 was part of plaintiffs' investment.

More importantly, plaintiffs cannot successfully compel reversal of the judgment by simply attacking one or more particular finding of fact. Where other findings, sustained by the evidence, support the judgment, an appellate court will presume the judgment to be based on these findings with the result that questions related to other findings become immaterial. (*Logan* v. *Forster*, 114 Cal.App.2d 587, 602 [250 P.2d 730].) However, unsupported or inconclusive as some findings may be, a judgment must be affirmed if there is at least one clear finding sustained by the evidence. (*Kreisa* v. *Stoddard*, 127 Cal.App.2d 627, 633 [274 P.2d 164].)

In this case the trial court granted defendant's section 631.8 motion for two reasons. First, as noted above, plaintiffs failed to offer expert testimony concerning an attorney's standard of care. Hence, absent such testimony, plaintiffs simply could not maintain that defendant had been negligent in breaching a duty owed.

Second, the court granted defendant's section 631.8 motion because plaintiffs failed to demonstrate that defendant's negligence, assuming arguendo any negligence occurred, proximately caused their alleged monetary damage. In that regard, finding of fact No. 25 reads: "[t]here was no proof that any act or omission by [defendant] was the proximate cause of the plaintiffs' loss of $24,000 or the proximate cause of any loss suffered by the plaintiffs." The record indicates that plaintiffs attempted to establish defendant's negligence liability by proof that he failed to file a certificate of limited partnership. Substantial evidence existed to support that contention. However, as defendant's attorney correctly observed during trial, "the failure or the fact that a Certificate of Limited

Partnership was not recorded, . . . the Limited Partnership Agreement ultimately was not signed has nothing whatever to do with the plaintiffs' loss . . ." The evidence thus demonstrated that the damages suffered by plaintiffs, consisting of the loss of certain funds invested in the partnership, could not be causally traced to any alleged negligent act by defendant.

After examining the record, we agree with the court's conclusion and hold no error occurred when the trial court granted defendant's Code of Civil Procedure section 631.8 motion.[6]

## III

■ *The trial court properly denied plaintiffs' motion to grant a hearing to consider objections to certain findings of fact.*

California Rules of Court, rule 232(f), provides that "[t]he court *may*, on the motion of any party who appeared at the trial or on its motion, order a hearing on objections to the proposed findings, conclusions or judgment . . ." (Italics added.) Whether such a hearing is ordered is within the sound discretion of the trial court.

In determining whether a trial court abuses its discretion in denying a hearing to consider objections to findings of fact, an appellate court must carefully examine the reason or reasons urged by the moving party for seeking such a hearing. For example, if a party points to evidence in the record necessary to support the judgment and the findings of fact fail to reflect that evidence, a trial court would abuse its discretion in failing to grant a hearing pursuant to rule 232(f). In contrast, when a party fails properly to articulate any justification for granting such a hearing, other than an unsupported assertion that the findings are erroneous, no abuse of discretion occurs.

In the case at bench, when plaintiffs interposed their objections, they merely submitted a short document objecting to certain findings and requesting a hearing. They failed, however, to prepare counterfindings or discuss any evidence produced during trial which would lead to a conclusion that certain findings of fact were erroneous. Furthermore,

---

[6]We note parenthetically, that the trial court, before ruling on defendant's section 631.8 motion, offered plaintiffs the opportunity to present additional evidence to bolster their case. However, plaintiffs, erroneously believing they had established a prima facie case of attorney malpractice, did not take advantage of that opportunity.

plaintiffs failed to include, as support for their motion, any memoranda of points and authorities. Similarly, on appeal plaintiffs fail to explain how the court's denial constituted an abuse of discretion, urging only that "refusal of the court to grant such a hearing . . . constitutes an abuse of discretion." Based on plaintiffs' failure specifically to articulate how the trial court abused its discretion, we hold that the court did not abuse its discretion in denying plaintiffs' motion for a hearing to consider objections to certain findings of fact.

DISPOSITION

The judgment is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.