[Civ. No. 16125. Second Dist., Div. Three. Aug. 2, 1948.]

VERN PRESTON, Appellant, v. ADRIAN O. HUBBELL, Respondent.

F. A. Knight for Appellant.

Gibson, Dunn & Crutcher for Respondent.

SHINN, Acting P. J.—In this action for damages resulting from alleged negligence in the removal of a tooth, plaintiff appeals from a judgment on verdict in favor of defendant.

Plaintiff's dentist advised the removal of an impacted wisdom tooth and defendant, a specialist, performed the operation. While plaintiff was under an anaesthetic defendant chiseled away the bone over the tooth, removed the

top half, separated the tooth from the jawbone down to the lower one-fourth of the roots and removed it with an elevator. There was evidence that the operation was a difficult one, under the conditions, and that defendant so advised plaintiff. During the operation a fracture occurred on the inner side of the jaw. While plaintiff was still under the influence of the anaesthetic defendant repaired the fracture by means of wires which held the parts together, and also held the jaws together in a closed position. Thereafter, plaintiff received treatment from defendant for several weeks, was discharged, developed infection in the jaw, consulted another doctor who lanced the jaw for the removal of an abscess.

The complaint was in two causes of action. In the first it was alleged that defendant was negligent in removing the tooth and that as a result thereof the jaw was fractured. The answer consisted of denials and a plea of contributory negligence. The case went to the jury on this cause of action and verdict and judgment were for the defendant. The allegations of the first cause of action were repeated in the second, and certain additional facts were alleged which it is contended stated a separate cause of action. It was alleged that the fractured jaw was not properly set, that plaintiff received treatment from defendant from the date of the operation, June 9, to July 5, 1944, was then discharged as cured, although the jaw was infected, that plaintiff was required to have an operation for the removal of an abscess which was performed by another surgeon, and that defendant in the course of his treatment was rough, brutal, abrupt, discourteous, gruff, short, uninformative and indifferent. It was further alleged that defendant proceeded to repair the fractured jaw without plaintiff's knowledge or consent. In each cause of action it was alleged that defendant was guilty of malice and oppression in the operations that he performed, and there was a prayer for exemplary damages. At the close of plaintiff's evidence defendant moved for a nonsuit on the second cause of action and the motion was granted. The instructions withdrew from the jury the issue of exemplary damages. The grounds of appeal are: (1) insufficiency of the evidence to justify the verdict on the first cause of action; (2) error in granting a judgment of nonsuit on the second cause of action; (3) error in instructing on contributory negligence and unavoidable accident; and (4) error

in instructing that there was no evidence of malice or oppression on the part of defendant.

Plaintiff's claim that the verdict on the first cause of action was unsupported by the evidence, is not sustained by the record. An expert called by her testified, in effect, that the force used by defendant in removing the tooth was not in conformity with the standard of care and skill commonly used in the community by dentists or specialists in the extraction of teeth. He based this opinion solely upon the fact that the fracture occurred. Expert witnesses testified for defendant. It appeared without question that after defendant had removed the top half of the tooth there were two methods which might have been employed for the removal of the remainder, one by the use of a burr to break up and further separate the roots from the surrounding bone, and the other the use of an elevator to loosen and remove it. Defendant employed the latter method and there was expert testimony that it was a matter of judgment which would have been the safer method, and further testimony that there would have been as great, if not greater, danger in using the burr in the deepest part of the jaw, as in the use of the elevator. Defendant testified that the mandible on the lingual side where the fracture occurred was, due to an infected condition, "paper thin." Plaintiff relies strongly upon the testimony of defendant given under section 2055, Code of Civil Procedure, that when he discovered this condition he thought he had but "a slim chance of removing the tooth without a fracture"—that a fracture was "almost inevitable." All of the expert testimony on the subject was that it was necessary to complete the operation by one or the other of the described methods. Dr. Emil Tholen, who has practiced in Los Angeles and taught oral surgery in the University of Southern California for 26 years, testified in answer to a hypothetical question that defendant employed the usual care and skill in the operations performed by him. Other qualified experts testified to the same effect. The jurors were fully warranted in giving full effect to this testimony in determining that defendant was guilty of no breach of duty.

We shall discuss next certain of the allegations of the second cause of action and the contention that there was sufficient evidence to require submission to the jury of the issues arising thereunder. There was no evidence which would have sustained a finding of negligence in the discharge of plaintiff as cured at the time defendant discontinued his

treatment. Plaintiff testified there was a soreness and swelling in her cheek, which defendant told her might not disappear for several months. She received instructions from defendant as to care of her injury, her diet and certain medication to be self-administered. While it is asserted in the opening brief that plaintiff's jaw and face were at that time infected and that an abscess had formed, there was no evidence that infection then existed or that further instruction or treatment for the swollen condition was then indicated. Plaintiff had received treatment almost daily from June 9 until July 5. About the middle of July she consulted Dr. McCoy and received treatment from him until some 8 or 10 days later, when he made an incision and removed an abscess. Dr. McCoy was not called as a witness.

The next point is that the fracture was repaired without plaintiff's express consent. When defendant was employed to extract the tooth there was no discussion of other services that might be required and, since plaintiff was unconscious while the jaw was being repaired, she did not give express consent to that operation. The question is whether plaintiff's employment of defendant to remove the tooth was implied consent to the repair of her jaw that was broken during the operation, or in other words, whether plaintiff did not impliedly consent to the performance of such emergency work as became necessary in order to completely repair a condition that developed during the operation. We think the only rational answer to this question is that plaintiff must be deemed to have consented to the repair of the fracture. Defendant either had to reduce the fracture while plaintiff was unconscious or wait until she became conscious and then request her consent to a repair of the damage. It was necessary that the broken jaw be repaired promptly. Making the repair was as much in the line of defendant's professional work as was the extraction of the tooth. No reason is suggested why defendant would not have been requested to make the repair if plaintiff had been in condition to be consulted.

It is the general rule that in cases of emergency, or unanticipated conditions where some immediate action is found necessary for the preservation of the life or health of a patient and it is impracticable to first obtain consent to the operation or treatment which the surgeon deems to be immediately necessary, the surgeon is justified in extending the operation to remove and overcome such conditions with-

out the express consent of the patient thereto. (See cases collected in 41 Am.Jur., p. 222.) It was said in *Delahunt* v. *Finton*, 244 Mich. 226 [221 N.W. 168], as follows: "It is settled that a surgeon may lawfully perform, and it is his duty to perform, such operation as good surgery demands, in cases of emergency, without the consent of the patient." The court said, in *Jackovach* v. *Yocom*, 212 Iowa 914 [237 N.W. 444, 449, 76 A.L.R. 551]: "While the courts are not entirely in harmony upon the question of consent to an operation, we think the better reasoning supports the proposition that, if a surgeon is confronted with an emergency which endangers the life or health of the patient, it is his duty to do that which the occasion demands within the usual and customary practice among physicians and surgeons in the same or similar localities, without the consent of the patient." And further, on page 451 [237 N.W.]: "If the surgeon is not to be permitted to honestly use his best judgment upon the necessity for an operation, without waiting to get the consent of either the patient or his parents, then is the skilled hand of the expert stayed by an unreasonable rule, often to the detriment of the patient and humanity as large." In *McGuire* v. *Rix*, 118 Neb. 434 [225 N.W. 120, 123], the court said, in part: "The use of anesthesia in modern surgery has modified to some extent the ancient rule of the common law requiring consent. Of course the general rule requires consent of the patient, but consent may be implied from circumstances and an operation may be demanded by an emergency without consent." The requirement of the common law that the consent of the patient to surgical operations must be obtained was discussed with relation to the present universal use of anaesthesia in surgery by the Supreme Court of New Jersey, in *Bennan* v. *Parsonnet*, 83 N.J.L. 20 [83 A. 948], and in speaking of the practical impossibility of obtaining express consent of a patient under anaesthesia the court said, in part: "To meet this fundamental change in the condition of the patient, it is imperative that the law shall in his interest raise up some one to act for him—in a word, to represent him in those matters affecting his welfare concerning which he cannot act for himself because of a condition that has become an essential part of the operation. If such a representative has been chosen by the patient himself, the rule we are considering has no application, but, if no one has been so appointed, the law by its constructive power will raise up such a representative without which the welfare

and even the life of the patient might be needlessly sacrificed. To meet the requirements of the case, such representative should not only keenly appreciate the nature of the duty that is thus cast upon him, but also be possessed of the knowledge and skill to perform such duty with wisdom and promptness. He should also be one in whom the patient reposes confidence and on whose judgment he would presumably rely. The surgeon whom the patient himself has selected alone fills all of these requirements, and hence upon him the law should cast the responsibilities of this office by the legal implication that the patient intended him to act for him when he had made no other selection.'' Plaintiff does not question these rules of law, but seeks only to avoid their application in her case. She contends that it was a question for the jury whether the emergency was one in which defendant was justified in repairing the fracture without first obtaining her consent. She merely makes the assertion and offers no supporting argument. In *Valdez* v. *Percy*, 35 Cal.App.2d 485, 491 [96 P.2d 142], the court recognized the general rule pertaining to the performance of emergency operations without express consent of the patient. It was held in that case, very properly, that where the evidence is in conflict as to whether an unauthorized operation is a necessary one, the question should be submitted to the jury as one of fact. It is clear, however, that we have no such question in the present case. Plaintiff offered no evidence that an immediate operation was not required. The common sense of the situation would persuade us that in such circumstances it would be the duty of a skilled operator to proceed at once to repair the broken jaw. While it was alleged in the second cause of action that defendant proceeded to repair the break without plaintiff's knowledge or consent, it was not alleged that the operation was unnecessary, nor was any claim made at the trial that immediate repair of the injury was not good practice. It is clear that want of consent was alleged as a mere incident to .the allegedly unskillful operation to repair the fracture, and that plaintiff is seeking damages not because the operation was performed without authority, but because it was performed without skill and care. We hold that consent to the repair of the broken jaw was implied under the circumstances of the case. This is not, of course, to hold that consent to one operation is always to be regarded as implied consent to the performance of another operation, unanticipated by the patient, but which the surgeon, upon discovering

unexpected conditions, may deem advisable. Each case must be governed by its own facts. Inasmuch as it was not questioned that good practice required prompt repair of the fracture, the operation, if performed with skill and care, would have resulted in no detriment to plaintiff, nor did she allege detriment except as the result of negligence.

The next claim of error to be considered is that it was improper to give certain instructions on contributory negligence. This defense was pleaded in an amendment to defendant's answer in the following terms: ''That subsequent to the extraction of plaintiff's tooth and the repair of her said jaw defendant prescribed a diet consisting of soft eggs, gravies, fruit, fruit juices, cereals, milk and ice cream to be followed by said plaintiff and also prescribed emprine compound with one-half grain (½ gr.) of Codine, which prescription came in the form of pills and plaintiff was directed to take two of said pills every six hours by said defendant; that defendant further prescribed that plaintiff take Stuart's Oral Theratabs and also Stuart's Formula, liquid form; that defendant is informed, and believes, and therefore alleges, that plaintiff negligently failed to follow the advice of said defendant as to her said diet, as above described, and carelessly and negligently failed to take the aforesaid medicines presribed by said defendant and defendant alleges that by reason of her carelessness and negligence in this regard her system became weakened and that if plaintiff's jaw did become infected such infection was proximately caused and contributed to by the fault, carelessness and negligence of the plaintiff in failing to follow the above advice and directions given her by said defendant.'' Contributory negligence was not pleaded generally, nor by alleging any acts other than those specified.

At the request of defendant the court gave three instructions on contributory negligence. One was a general instruction under which the jury would have been authorized to resolve the issue in defendant's favor upon proof of any conduct of plaintiff deemed sufficient under the instruction to establish a defense. Another instruction was based upon a hypothetical finding of negligence of plaintiff in not returning to defendant for further treatment when the pain and swelling in her jaw increased, and the third instruction was in the same terms except that it related to her delay in seeking medical care elsewhere when she noticed an increase in the pain and swelling. The instructions were correct statements of the law,

and it would not have been improper to give them if they had been responsive to the allegations of defendant's answer and to the evidence. However, it was error to give the instructions for the reasons: contributory negligence was not pleaded in general terms; the instructions did not relate to the specific acts pleaded by defendant; they related to specific acts not pleaded and to claimed negligent conduct on the part of plaintiff as to which no evidence was produced which would have justified a finding of negligence.

Contributory negligence is an affirmative defense and specific acts must be alleged. (*Crabbe* v. *Mammoth Channel G. Min. Co.,* 168 Cal. 500, 505 [143 P. 714] ; *Brooks* v. *City of Monterey,* 106 Cal.App. 649, 653 [290 P. 540] ; 19 Cal.Jur. 683.) When specific acts of negligence are alleged they are the only ones that can be relied upon at the trial. (*Hanton* v. *Pacific Electric Ry. Co.,* 178 Cal. 616, 222 [174 P. 61] ; *McKeon* v. *Lissner,* 193 Cal. 297, 304, 310 [223 P. 965] ; *O'Connor* v. *Mennie,* 169 Cal. 217, 222 [146 P. 674] ; *Mobile Elec. Co.* v. *Sanges,* 169 Ala. 341 [53 So. 176, Ann.Cas. 1912B 461] ; *Atchison T. & S. F. R. Co.* v. *Dickey,* 1 Kan.App. 770 [41 P. 1070, 1073].)

Although specific acts of negligence only were alleged in the answer, under the general instruction first mentioned any and all other acts of plaintiff were to be considered by the jury in determining whether plaintiff had been guilty of want of ordinary care and caution in any manner whatsoever which contributed directly and proximately to the injuries she had sustained. The court in *Carbaugh* v. *White Bus Line,* 51 Cal. App. 1, 5 [195 P. 1066], in holding a similar instruction to have been properly refused, stated as follows: "The vice of the foregoing instruction is discovered when it is compared with that portion of the defendant's answer which contains his affirmative plea with regard to the contributory negligence of the plaintiff. His pleading in that regard is specific, setting forth with particular detail the specific acts of the plaintiff's alleged negligence upon which the defendant relies. In the above-quoted instruction, however, after reciting certain of these specific negligent acts, the defendant seeks to have the court charge the jury that 'if he [said plaintiff] was negligent in any other particular, and that said negligence, or any of it, contributed even in a small degree to the accident, then neither of the plaintiffs can recover, and your verdict must be for the defendant.' This portion of said instruction is so clearly con-

trary to law that it requires no authority to uphold the action of the trial court in refusing to give it.''

The two succeeding instructions were even more sharply in error.

The terms in which contributory negligence was pleaded gave notice to plaintiff that she would be charged with negligence in failing to obey defendant's instructions with reference to care and medication, but did not require her to anticipate that defendant would endeavor to establish negligence on her part in failing to return to him for treatment or to promptly seek treatment elsewhere.

Our attention has not been called to any evidence, and we have found none, that would have warranted a conclusion that the infection in plaintiff's jaw was caused or aggravated by any failure on her part to comply with defendant's instructions with respect to care and medication. Defendant was evidently of the same opinion. No instruction was given which embodied the facts pleaded by defendant.

Our conclusions as to the harmful effect of the two specific instructions may be stated briefly: the questions whether the delay of a week or 10 days to secure further medical attention caused or aggravated the infection, and whether more prompt treatment would have obviated the operation, were for physicians and not laymen. Defendant, having the affirmative of the issue offered no evidence thereon. Plaintiff, having nothing to rebut, offered none. The jury had nothing to serve as a guide in deciding these questions and a conclusion adverse to plaintiff upon this issue would have been unsupported by any evidence. It cannot be assumed as a fact that plaintiff, if called upon to do so, could not or that she would not have offered testimony by Dr. McCoy and others that the abscess could not have been cured by earlier treatment, without an operation. The error in the instructions was obviously prejudicial. There is no occasion here to apply to the plea of contributory negligence the rule that insufficiency of the pleadings will be deemed cured if an issue not pleaded has been fully tried and determined without objection. There was no trial of the issue to which the instructions related.

▆ It was not error to withdraw from the jury the issue of exemplary damages. Plaintiff's testimony that defendant's methods were rough and his manner discourteous fell far short of proving malice or oppression. It is not in evidence that defendant held himself out as a painless dentist, and the fact

that his methods were painful does not indicate that they were intentionally cruel.

The judgment is reversed.

Wood, J., and McComb, J. assigned, concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 30, 1948.