RACHEL CURTIS, Plaintiff-Appellant, v. DAVID G. JASKEY, Defendant-Appellee.

Second District   No. 2—00—1204

Opinion filed November 20, 2001.

Jeffrey L. Whitcomb, of Law Offices of Jeffrey L. Whitcomb, of Elmhurst, for appellant.

James T. Ferrini, Edward M. Kay, and Barbara I. Michaelides, all of Clausen Miller, P.C., of Chicago, and Thomas H. Ryerson and Nick Alexander, both of Clausen Miller, P.C., of Wheaton, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Rachel Curtis, appeals the judgment of the circuit court of Du Page County granting summary judgment in favor of defendant, David G. Jaskey. Plaintiff contends that the trial court erred in determining that her battery claim was barred because defendant was reacting to a medical emergency when he performed an episiotomy on her. For the reasons that follow, we reverse and remand this cause for further proceedings.

Plaintiff sought prenatal care from defendant for the first time in May 1996. She saw defendant three additional times in the period between her first visit and the delivery of her child. During the first visit, plaintiff asserts that she informed defendant that he was not to perform an episiotomy during childbirth and that defendant agreed to

her request. Plaintiff further asserts that she reminded defendant of this condition during subsequent visits. Defendant disputes that he agreed that an episiotomy would, under no circumstances, be performed. Instead, he contends that he stated he would try to avoid performing one but would have to make the ultimate decision during delivery. Eventually, the decision was made to induce labor. After arriving at the hospital, plaintiff signed a consent form; however, she crossed out the portion of the form indicating that she was consenting to an episiotomy. Additional conflicting evidence concerning whether plaintiff consented to the procedure exists in the record but need not be set forth here. Approximately five hours after arriving at the hospital, plaintiff delivered her child. Plaintiff's labor progressed very quickly. Shortly before delivery, plaintiff's posterior fourchette began to tear. Defendant performed an episiotomy about two minutes prior to the birth.

Dr. Edward Axelrod testified on defendant's behalf in a discovery deposition. Axelrod opined that the circumstances under which defendant performed the episiotomy constituted a medical emergency. Jaskey, in his discovery deposition, also characterized the situation as an emergency. Axelrod added that, given the circumstances, with plaintiff being in the second stage of labor and in pain, it was impractical for Jaskey to obtain consent for the procedure at that time. Both doctors testified regarding the risks an episiotomy is designed to mitigate. The procedure prevents a ragged and uncontrolled tear that can sometimes extend into the vagina. Copious bleeding, the leading cause of maternal death, can result. Compared to a tear, episiotomies are less painful and more cosmetically appealing. They also facilitate healing.

In ruling upon defendant's motion for summary judgment, the trial court first acknowledged that there is no question that plaintiff did not consent to having an episiotomy performed upon her. However, the trial court felt that the real issue in the case was whether an emergency existed and whether obtaining plaintiff's consent was impractical. It answered both questions affirmatively, relying on the testimony of defendant and Axelrod. Accordingly, the trial court granted summary judgment for defendant.

■ Because this case comes to us following a grant of summary judgment, review is *de novo. Corona v. Malm*, 315 Ill. App. 3d 692, 694 (2000). Summary judgment is appropriate only when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Kenner v. Northern Illinois Medical Center*, 164 Ill. App. 3d 366, 373 (1987). The record must be construed liberally in favor of the party opposing the motion and strictly against the movant. *Largosa v. Ford Motor Co.*, 303 Ill. App. 3d 751, 753 (1999). Summary

judgment is a drastic means of disposing of litigation and should be granted only where the movant's right to judgment is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986).

■ In the present case, two overriding factual issues are relevant. First, whether plaintiff consented to the episiotomy is hotly disputed. Plaintiff contends that not only did she not consent to the procedure but also she expressly forbade it. As we are required to construe the record liberally in plaintiff's favor, we must accept this contention for the purpose of resolving this appeal. Second, it is undisputed that defendant performed the episiotomy in circumstances that constituted a medical emergency. Defendant and Axelrod both testified to this. Whether an emergency existed involved making an assessment of plaintiff's medical condition and hence must be established by expert testimony. *Schindel v. Albany Medical Corp.*, 252 Ill. App. 3d 389, 398 (1993). Because plaintiff introduced no expert testimony to controvert the two doctors' testimony regarding the emergency nature of the procedure, we must take their testimony as true in assessing whether summary judgment is appropriate in this case. See *Evanston Hospital v. Crane*, 254 Ill. App. 3d 435, 440-41 (1993).

■ A battery has been defined as the unauthorized touching of the person of another. *Gaskin v. Goldwasser*, 166 Ill. App. 3d 996, 1011-12 (1988). Thus, at common law, a patient must consent before a physician renders medical treatment of any kind. *In re Estate of Longeway*, 133 Ill. 2d 33, 44 (1989). The United States Supreme Court noted long ago that "[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pacific Ry. Co. v. Botsford*, 141 U.S. 250, 251, 35 L. Ed. 734, 737, 11 S. Ct. 1000, 1001 (1891). In an early case involving a medical battery, Justice Cardozo made the following observation: "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages." *Schloendorff v. Society of New York Hospital*, 211 N.Y. 125, 129-30, 105 N.E. 92, 93 (1914), *overruled on other grounds by Bing v. Thunig*, 2 N.Y.2d 656, 667, 143 N.E.2d 3, 9 (1957). Our legislature has recognized this right. See 755 ILCS 40/5 (West 1996) ("[A]ll persons have a fundamental right to make decisions relating to their own medical treatment, including the right to forgo life-sustaining treatment"). Thus, the necessity of obtaining consent before a medical procedure is performed has long been a part of American law. See also *Pratt v. Davis*, 224 Ill. 300, 305 (1906).

■A corollary to the requirement that a patient's consent must be obtained prior to the performance of a medical procedure is that a patient is entitled to refuse medical treatment. *Longeway*, 133 Ill. 2d at 45. In fact, absent consent, a patient cannot be compelled to submit to a medical procedure even where the patient's life is in jeopardy. *Longeway*, 133 Ill. 2d at 45. In a medical-battery case, a plaintiff may recover by establishing either a total lack of consent to the procedure performed, that the treatment was contrary to the patient's will, or that the treatment was at substantial variance with the consent granted. *Hernandez v. Schittek*, 305 Ill. App. 3d 925, 930 (1999). It is unnecessary for a plaintiff to establish hostile intent on the part of the defendant; rather, the gist of an action for battery is the absence of consent on the plaintiff's part. *Gaskin*, 166 Ill. App. 3d at 1012.

■ There are, of course, exceptions to this rule. At issue in this appeal is what is sometimes referred to as the emergency exception. See *Longeway*, 133 Ill. 2d at 45. This exception provides a defense to physicians who render care in an emergency situation and is reflected in two of Illinois' pattern jury instructions. See Illinois Pattern Jury Instructions, Civil, Nos. 105.06, 105.07 (2000) (hereinafter IPI Civil). The trial court relied on IPI Civil (2000) No. 105.07 in reaching its decision. That instruction provides that consent need not be obtained if "an emergency arises and treatment is required in order to protect the patient's health, and it is impossible or impracticable to obtain consent either from the patient or from someone authorized to consent for him." IPI Civil (2000) No. 105.07. As noted above, uncontroverted testimony indicates that a medical emergency existed. However, in this case, we are faced with a rather unique circumstance. Defendant argues, and the trial court held, that the existence of an emergency was sufficient to override plaintiff's express refusal to permit defendant to perform an episiotomy upon her. In order to determine if the emergency exception can work such a result, we must examine its nature and basis.

The first reference in Illinois law we have located that sheds light upon the nature of the emergency exception occurred in *Pratt v. Davis*, 118 Ill. App. 161, 165-66 (1905), where the court observed that "various cases which might be supposed of sudden and critical emergency, in which the surgeon would be held justified in major or capital operations without express consent of the patient, might be referred to the same principle of an implied license." Later, the court noted that a surgeon has no right to perform an operation unless "the consent of the patient is express, or is implied by [the] circumstances." *Pratt*, 118 Ill. App. at 166-67. Thus, it appears, in its genesis, the emergency exception was grounded in notions of implied consent. We note that

the jury instructions that set forth the emergency exception cite *Pratt*, 224 Ill. 300, which is the supreme court opinion that affirmed the lower court decision from which the language set forth above is drawn. IPI Civil (2000) Nos. 105.06, 105.07.

The Restatement (Second) of the Law of Torts recognizes that the emergency exception is based on implied consent. It provides:

"Conduct that injures another does not make the actor liable to the other, even though the other has not consented to it if

(a) an emergency makes it necessary or apparently necessary, in order to prevent harm to the other, to act before there is opportunity to obtain consent from the other or one empowered to consent for him, and

(b) the actor has no reason to believe that the other, if he had the opportunity to consent, would decline." Restatement (Second) of Torts § 892D (1979).

This section empowers an individual to act where the other is likely to consent, that is, where action is necessary to prevent harm to the other. Subsection (b) provides a limitation. If the individual has reason to believe that the other would not consent, he may not act. Given a belief that the other would not consent, it becomes impossible to imply consent from the circumstances. The first comment to this section confirms this interpretation, stating that the individual is empowered to act "on the assumption that if the other had the opportunity to decide he would certainly consent." Restatement (Second) of Torts § 892D, Comment *a*, at 380 (1979).

Other jurisdictions also base their versions of the emergency exception on implied consent. In *Preston v. Hubbell*, 87 Cal. App. 2d 53, 196 P.2d 113 (1948), a patient sued her dentist, alleging a battery when the dentist repaired her jaw, which had fractured during the removal of an impacted wisdom tooth. The *Preston* court framed the issue as whether the "plaintiff did not impliedly consent to the performance of such emergency work as became necessary in order to completely repair a condition that developed during the operation." *Preston*, 87 Cal. App. 2d at 57, 196 P.2d at 115. In deciding this case, the court stated:

"It is the general rule that in cases of emergency, or unanticipated conditions where some immediate action is found necessary for the preservation of the life or health of a patient and it is impractical to first obtain consent to the operation or treatment which the surgeon deems to be immediately necessary, the surgeon is justified in extending the operation to remove and overcome such conditions without the express consent of the patient thereto." *Preston*, 87 Cal. App. 2d at 57-58, 196 P.2d at 115.

The court then held that consent "was implied under the circumstances." *Preston*, 87 Cal. App. 2d at 59, 196 P.2d at 117. The *Preston*

court relied, *inter alia*, on a Nebraska case that stated, "[T]he general rule requires consent of the patient, but consent may be implied from the circumstances and an operation may be demanded by an emergency without consent." *McGuire v. Rix*, 118 Neb. 434, 440, 225 N.W. 120, 123 (1929); see also *Jackovach v. Yocom*, 212 Iowa 914, 925, 237 N.W. 444, 450 (1931).

Many jurisdictions have articulated a similar basis for the emergency exception. In *Williams v. Payne*, 73 F. Supp. 2d 785, 803 (E.D. Mich. 1999), the court held that "consent may be implied, as in cases of emergency where there is no opportunity to obtain actual consent or where the patient seeks treatment or otherwise manifests consent." A Texas court observed that, in a situation where a physician is confronted with an unconscious patient whose injuries required prompt attention, "consent on the part of the injured person would be implied on the ground of an existing emergency." *Moss v. Rishworth*, 222 S.W. 225, 226 (Tex. Comm'n App. 1920). In *Barnett v. Bachrach*, 34 A.2d 626, 629 (D.C. 1943), the court stated, "We do not attempt to mark off the line which will define the type of emergency which will create implied consent in every case ***." Similarly, an Ohio court noted that medical treatment is lawful "under the doctrine of implied consent when a medical emergency requires immediate action to preserve the health or life of the patient." *Allore v. Flower Hospital*, 121 Ohio App. 3d 229, 236, 699 N.E.2d 560, 564 (1997).

Thus, it is clear that the emergency exception is based upon the doctrine of implied consent. In ordinary circumstances, when a physician is confronted with a patient who is unable to consent and is in need of prompt medical attention, it is logical to assume that the patient would consent to the procedure and imply the patient's consent from the circumstances. Where, however, a patient has expressly refused to assent to some procedure, implying consent from the circumstances becomes problematic. This proposition is particularly true where the patient is aware of the risks and benefits of a procedure and makes a considered decision to forgo it.

■ The mere existence of an emergency that places a patient at risk of future harm does not give a physician "a license to force medical treatment and ignore a patient's exercise of the right to refuse medical treatment." *Prairie v. University of Chicago Hospitals*, 298 Ill. App. 3d 316, 325-26 (1998). Where a patient expressly refuses medical treatment, or the patient's instructions specifically preclude the treatment rendered, treatment contrary to the patient's will constitutes a battery even when an emergency exists. *Anderson v. St. Francis-St. George Hospital*, 83 Ohio App. 3d 221, 225-26, 614 N.E.2d 841, 844 (1992). As one court recognized, "[c]arried to its extreme ***, the doc-

trine of implied consent could effectively nullify'¹ an individual's right to refuse medical treatment. *Estate of Leach v. Shapiro*, 13 Ohio App. 3d 393, 396, 469 N.E.2d 1047, 1053 (1984). The doctrine could allow a physician to circumvent an individual's express wishes by waiting to act until a patient is unable to consent and is in need of some sort of treatment. *Leach*, 13 Ohio App. 3d at 396-97, 469 N.E.2d at 1053. Thus, that court concluded that an individual's refusal "may not be overcome by the doctrine of implied consent." *Leach*, 13 Ohio App. 3d at 397, 469 N.E.2d at 1053. We find this reasoning persuasive and similarly hold that, under usual circumstances, the emergency exception may not be used to override the express wishes of a patient who withholds consent to a medical procedure.

We recognize that unusual circumstances may exist under which an individual's express refusal to allow some sort of treatment may be disregarded. Consent is a question of fact. *Kenner*, 164 Ill. App. 3d at 374. It is conceivable that, in some cases, circumstances could change so as to raise a question regarding whether an individual would persist in a refusal. The *Leach* court provided the following example:

> "A terminally ill patient fully advised of an impending crisis might then be able to refuse treatments which would only prolong suffering, while a patient afflicted with a disease which would be terminal in several years and who had generally expressed a desire to die peacefully would *not* be denied treatment for injuries sustained in an automobile crash. Both doctor and patient would then be protected from statements not made in contemplation of the specific circumstances and the specific medical treatment required." (Emphasis in original.) *Leach*, 13 Ohio App. 3d at 397, 469 N.E.2d at 1053.

When a patient's refusal is called into doubt by a change in circumstances, like the automobile accident in the *Leach* court's example, the refusal becomes one factor to consider in deciding the factual question of whether the patient would have consented under the changed circumstances. Similarly, when a refusal is ambiguous, the trier of fact may properly consider whether the patient intended it to apply to a given factual situation. Under appropriate circumstances, then, it is possible to imply consent despite an earlier refusal to assent to a particular procedure. The key consideration here is whether the patient intended the refusal to apply in the circumstances under which the treatment was rendered. If the circumstances under which the procedure was performed were known to the patient, it is likely that the patient intended the refusal to apply.

■ Accordingly, we hold that, in the face of a clear refusal to submit to a medical procedure, the emergency exception is inapplicable. In

the present case, an issue of fact exists as to whether plaintiff expressly forbade defendant to perform an episiotomy. Consequently, the trial court erred in granting summary judgment for defendant.

Before concluding, we will address three points raised by defendant. First, defendant asserts that the emergency exception properly reconciles a physician's conflicting duties to obtain consent before rendering medical care and to exercise skill and judgment to protect patients from harm, the dereliction of which would subject the physician to malpractice liability. Defendant's reasoning is flawed. Absent consent, whether express or implied, a physician has no right to render medical treatment to a patient. *Longeway*, 133 Ill. 2d at 44-45. Where a patient refuses to consent to a medical procedure, no duty arises on behalf of a physician to perform that procedure such that the physician can be held liable for failing to perform it. The duty of a physician to render competent medical care arises as a consequence of the physician-patient relationship. See *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 85 (1996). Thus, a patient can delimit the scope of the relationship, and thus the scope of the physician's duty, by withholding consent to particular procedures. Because an action for medical malpractice must be predicated on a duty (*Reynolds*, 277 Ill. App. 3d at 85), an action for malpractice cannot be maintained for failing to perform a procedure that a patient has forbidden. In short, defendant fails to recognize that there are no conflicting duties in need of reconciliation when a patient withholds consent for some particular procedure.

Second, defendant attempts to distinguish cases that have dealt with terminally ill patients refusing medical treatment because this case does not involve plaintiff's "right to die." We have relied on some such cases in resolving this appeal. These cases do not set forth a "right to die" beyond that entailed in the common-law right to refuse medical treatment; rather, they recognize that the right to refuse life-sustaining medical treatment is entailed in the more general right to refuse medical treatment. See *Longeway*, 133 Ill. 2d at 44-45 ("Lacking consent, a physician cannot force medical care upon a patient, even in life-threatening situations"); *In re Estate of Greenspan*, 137 Ill. 2d 1, 18 (1990). The right at issue in the present case is the same right at issue in the "right to die" cases defendant seeks to distinguish. See *Prairie*, 298 Ill. App. 3d at 328. Hence, these cases provide guidance for the present situation. Moreover, we believe that distinguishing these cases in this manner would require courts to inquire into the basis for an individual's decision to withhold consent to treatment. Such inquiries would place a significant limitation upon this right, sanctioning its exercise only when a court deemed it appropriate. This

limitation would be wholly inconsistent with the common-law right to "determine what shall be done with [one's] own body" (*Schloendorff*, 211 N.Y. at 129, 105 N.E. at 93). See *Fox v. Smith*, 594 So. 2d 596, 604 (Miss. 1992) ("[A] competent individual has a right to refuse to authorize a procedure, whether the refusal is grounded on doubt that the contemplated procedure will be successful, concern about probable risk or consequences, lack of confidence in the physician recommending the procedure, religious belief, or mere whim"). Whether an individual refuses medical treatment for a justifiable reason, such as avoiding a death prolonged by artificial means, or for a questionable reason, such as mere whim, is not a relevant consideration in cases like the present one. We will not inquire into the basis of a competent patient's decision to forgo a medical procedure and ratify his or her decision only if it appears to be a sensible one.

Third, both defendant and plaintiff address cases that deal with the right to refuse medical treatment on religious grounds. See, *e.g.*, *In re Estate of Brooks*, 32 Ill. 2d 361, 372-73 (1965). Defendant attempts to distinguish them, noting that it is undisputed that plaintiff's religious freedom is in no way implicated in this case. We agree with defendant that these cases provide no guidance for resolving the instant case. In Illinois, the common-law right to refuse medical treatment and the religious right to refuse treatment, which is based upon the free-exercise clause of the first amendment (U.S. Const., amend. I), are distinct and separate rights. See *In re E.G.*, 133 Ill. 2d 98, 106 (1989). Since plaintiff is not asserting a religious basis for her refusal, the religious-freedom cases provide no support for her position. Further, since the common-law right to refuse medical treatment exists independently of the free-exercise right to refuse treatment, the absence of a religious motivation on plaintiff's part does not diminish her ability to assert her common-law right. The religious-freedom cases have no bearing on this appeal.

In light of the foregoing, we hold that the trial court erred in granting summary judgment in favor of defendant. We remand this cause for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

GEIGER and BYRNE, JJ., concur.